[Cite as *In re N.J.V.*, 2025-Ohio-375.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE  N.J.V. | : | |
| | | No. 114035 |
| A Minor Child | : | |
| | | |
| [Appeal by L.K., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 6, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR15714282

### *Appearances:*

Hans C. Kuenzi Co., L.P.A., and Hans C. Kuenzi, *for appellant*.

Kurt Law Office, LLC, Pamela D. Kurt, and Nicholas R. Sidoti, *for appellee*.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} In this case, the parents of the minor child, N.J.V., have been subject to a shared-parenting plan that was adopted by the trial court in 2018.  Pursuant to the shared-parenting plan, father, who lives in Highland Heights, Ohio, is the designated residential parent for school enrollment purposes.  In 2021, mother, who

lives in central Ohio, filed a motion to modify the shared-parenting plan, seeking to be designated as the residential parent for school enrollment purposes. The legal issue presented in this appeal concerns the applicable legal standard to be applied by the trial court in consideration of mother's motion. Specifically, the issue is whether a finding of a change in circumstances is required for the modification requested by mother pursuant to R.C. 3109.04.

{¶ 2} The trial court concluded that a finding of a change in circumstances was required and denied mother's motion because she presented insufficient evidence regarding a change in circumstances for the modification. The trial court also denied the mother's motion on an alternative ground that the modification would not serve the child's best interest. After a review of case law precedent, we conclude the trial court applied the incorrect standard and erred in requiring mother to show a change of circumstances. We, however, affirm the trial court's judgment because we do not find the trial court abused its discretion in determining the modification requested by mother would not serve the child's best interest.

**Substantive and Procedural Background**

{¶ 3} Mother and father are the parents of N.J.V., a minor child, who was born in September 2012. Mother was 18, and father was 23 at the time. The parents had a brief relationship and separated a month after the child was born. They shared parenting without the court's intervention until the child was three years old. Mother informed father she planned to move to central Ohio, near Columbus. As a result, in October 2015, father filed a complaint seeking a court order allocating

parental rights and responsibilities. In March 2016, mother moved to central Ohio with the child. Father filed a motion for shared parenting and submitted a proposed shared-parenting plan on June 24, 2016. The matter preceded to trial on June 19, 2017, and January 24, 2018.

{¶ 4} Following trial, father filed an updated shared-parenting plan dated June 13, 2018. Mother requested sole custody of the child and did not submit a shared-parenting plan. On September 5, 2018, the trial court issued a judgment granting shared parenting and adopting the shared-parenting plan proposed by father.

{¶ 5} Under the plan, mother and father are both designated as residential parents and legal custodians of the child but father is designated as the residential parent for school purposes. The child resides with father during the school week and resides with mother three weekends each month and four weeks each summer. The parties meet in Mansfield, Ohio to exchange the child.

{¶ 6} As a result of the trial court's judgment, the child was withdrawn from his preschool in Lancaster, Ohio, and enrolled in kindergarten in the Mayfield School District.

{¶ 7} Mother appealed the trial court's decision to this court. She argued that the trial court's judgment ordering shared parenting and designating father as the residential parent for school purposes was against the manifest weight of the evidence. On June 6, 2019, this court affirmed the trial court's decision. *In re N.J.V.*, 2019-Ohio-2234 (8th Dist.).

{¶ 8} Mother married in June 2018 and lives in Pickerington, Ohio. She has a six-year-old daughter with her husband. The household also includes her 13-year-old stepson. She is a stay-at-home parent but is taking classes online and working towards a bachelor's degree.

{¶ 9} Father also married in 2018 and lives with his wife and his 12-year-old stepdaughter in Highland Heights. He works full time for the City of South Euclid and his wife works full time at a hospital. The child has been enrolled in the Mayfield School District since kindergarten and just finished the fourth grade at the time of trial.

{¶ 10} The instant case began when, on August 26, 2021, father filed a motion to modify the shared-parenting plan regarding the scheduling of summer vacation. He alleged that mother claimed priority over the summer vacation schedule every year, and he requested that he be given priority every other year.

{¶ 11} Thereafter, on December 21, 2021, mother filed a motion to modify the shared-parenting plan. Mother requested to be designated as the residential parent for school purposes. She alleged that significant changes have occurred in the circumstances of the child and the parties since the September 5, 2018 judgment and that the best interest of the child would now be served by a modification of the shared-parenting plan.

{¶ 12} On June 26, 2023, the case was tried before a magistrate. Mother, her husband, and the child's maternal grandmother testified on behalf of mother.

Father testified on his own behalf, and the child's GAL testified as the court's witness.

{¶ 13} On August 21, 2023, the magistrate issued a decision. The magistrate found the child to be well adjusted in both homes. He gets along with his stepparents and siblings in both homes and has friends in both communities. The magistrate found that "the child's best interest could be served by living with either one of the parents." Because both parents are "entirely appropriate," the magistrate found the decision to be difficult. However, based on the GAL's recommendation and the child's stated wishes as expressed in an in camera interview,[1] the magistrate found it in the child's best interest to designate mother as the residential parent for school purposes while both parents remain designated as residential parents and legal custodians of the child.

**Trial Court's Judgment and Appeal**

{¶ 14} Father filed objections to the magistrate's decision, arguing that the magistrate erred in changing the designation of the residential parent for school purposes. He argued that, for the modification to be proper, mother must show there has been a substantial and unforeseen change in the circumstances and mother failed to present evidence for it. Father also argued that the magistrate failed to properly analyze the factors set forth in R.C. 3109.04(F)(1)(a)-(j) in determining

---

[1] In father's objection to the magistrate's decision, father alleged that the child has changed his mind since the in camera interview and also that the child's wishes have changed multiple times throughout the case.

that a change in the designation of the residential parent for school purposes would serve the child's best interest.

{¶ 15} The trial court sustained father's objections. It determined that before granting the modification requested by mother, the court must find that a change in circumstances has occurred in addition to a finding that the modification would be in the child's best interest. The court found that the magistrate erred in failing to consider if a change of circumstances has occurred. After reviewing the evidence, the trial court concluded there was insufficient evidence to determine that a change of circumstances had occurred and, therefore, mother's request to change the designation of the residential parent for school purposes should be denied.

{¶ 16} As an alternative ground for its decision, the trial court found that, even if a finding of a change in circumstances was not required, there was not "sufficient evidence presented to the Magistrate to indicate that significant and substantial upheaval in changing of school systems would be in the child's best interest, as the purpose of the statute is primarily to provide stability for the child." Accordingly, the trial court denied mother's motion to modify the shared-parenting plan and ordered the September 5, 2018 judgment to remain in effect.

{¶ 17} On appeal, mother raises the following two assignments of error for our review:

> I. The trial court erred in ruling that the modification of the terms of the shared-parenting plan sought by Mother required the finding of a change of circumstances.

II.     The trial court erred in finding that the modification of the terms of the shared-parenting plan sought by Mother would not serve the best interest of the child.

**First Assignment of Error: Is a Finding of a Change in Circumstances Required for Changing the Designation of the Residential Parent for School Purposes**

{¶ 18} R.C. 3109.04(E) governs the modifications of shared-parenting plans and decrees. The question presented in this appeal is whether division (E)(1)(a) or (E)(2)(b) governs when a party seeks a modification in the designation of the residential parent for school purposes. Division (E)(1)(a) refers to modifications of "a prior decree allocating parental rights and responsibilities" while division (E)(2)(b) refers to "the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree." Under the first assignment of error, mother argues the trial court erred in determining that R.C. 3109.04(E)(1)(a) applied in this case.

{¶ 19} We review the question of whether the trial court correctly interpreted and applied a statute de novo. *In re G.B.*, 2022-Ohio-382, ¶ 53 (8th Dist.), citing *State v. Asadi-Ousley*, 2017-Ohio-937, ¶ 13 (8th Dist.).

{¶ 20} Before reviewing the two statutory divisions at issue, we note that this case concerns the designation of the residential parent *for school purposes*. The provisions in R.C. 3109.04(L) are helpful for our review of the issue. R.C. 3109.04(L) states:

(6) Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of

a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child.

(7) Unless the context clearly requires otherwise and except as otherwise provided in the order, *a designation in the order of a parent as the residential parent for the purpose of determining the school the child attends* . . . does not affect the designation pursuant to division (L)(6) of this section of each parent as the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child.

(Emphasis added.)

{¶ 21} In this case, both parents are designated residential parents and legal custodians in the shared-parenting plan incorporated into the September 5, 2018 judgment and father is designated as the residential parent for school purposes. In her motion, mother seeks to change the designation of the residential parent for school purposes.

{¶ 22} R.C. 3109.04(E) governs the modification of a shared-parenting decree or plan. R.C. 3109.04(E)(1)(a) governs the requirement for the modification of "a prior decree allocating parental rights and responsibilities." Such a modification requires a finding that (1) there has been a change in circumstances of the child, residential parent, or either parent, (2) the modification is in the child's best interest, and (3) the benefits resulting from the change will outweigh any harm. The statute states:

The court shall not modify *a prior decree allocating parental rights and responsibilities* for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that *a change has occurred in*

*the circumstances of* the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

(Emphasis added.)

{¶ 23} In addition to the modification authorized under division (E)(1), division (E)(2) allows the modification of the *terms* of shared-parenting plan. For the court to modify under this section, it must find that the modification is in the best interest of the child. Pertinent to this case, R.C. 3109.04(E)(2)(b) allows a modification of the terms of a shared-parenting plan upon the request of either parent if the court finds such modifications are in the best interest of the child. It states:

(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any

modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 24} A comparison of the two statutory divisions indicates that modifications under R.C. 3109.04(E)(1)(a) require both a finding of a change in circumstances and a consideration of the best interest of the child, while modifications under R.C. 3109.04(E)(2)(b) require only an evaluation of the child's best interest. Because division (E)(1)(a) requires a higher standard of proof, a central question in cases involving modifications of shared-parenting plans is which division governs the case.

{¶ 25} In this case, the issue is which statutory division governs a modification of the designation of the residential parent *for school purposes* in a shared-parenting plan. If division (E)(1)(a) governs, mother must show a change in circumstances and the modification is necessary to serve the best interest of the child. If division (E)(2)(b) governs, mother must only show the change is in the child's best interest.

{¶ 26} The Supreme Court of Ohio discussed these different standards in *Fisher v. Hasenjager*, 2007-Ohio-5589. Although *Fisher* involves a modification in the designation of the residential parent and legal custodian, rather than the residential parent designation for school purposes, the Court's analysis of the two statutory divisions provides guidance here.

{¶ 27} The Court first noted that a "plan" is statutorily different from a "decree" or an "order." "An order or decree is used by a court to grant parental rights

and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian." *Id.* at ¶ 29. In contrast, "a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and *school placement.*" (Emphasis added.) *Id.* at ¶ 30, citing R.C. 3109.04(G). The Court explained that R.C. 3109.04(E)(1)(a) refers to a modification of a prior *decree* allocating parental rights and responsibilities while (b)(2) refers to a modification of the *terms* of a shared-parenting plan. "A modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child." *Fisher* at the syllabus (construing R.C. 3109.04(E))1)(a)). As this court noted, "'Typically, this [situation] arises when a parent wishes to change legal custody or become the sole residential parent and legal custodian rather than sharing custody.'" *F.T.*, 2020-Ohio-1624, at ¶ 52 (8th Dist.), quoting *Gessner v. Gessner*, 2017-Ohio-7514, ¶ 36 (2d Dist.).

{¶ 28} The Court in *Fisher* further explained that "[t]he requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities show a change of circumstances is purposeful[.]" *Id.* at ¶ 34. It stated:

> The intent of R.C. 3109.04(E)(1)(a) is "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children,

even though the parent out of custody may be able to prove that he or she can provide a better environment."

*Id.* at ¶ 34, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). In contrast, R.C. 3109.04(E)(2)(b) governs the modification of the *terms* of a shared-parenting plan and a finding of a change in circumstances is not required.

{¶ 29} The instant case concerns a designation of the residential parent for school purposes. As the Court in *Fisher* explained, the terms of a shared-parenting plan include "provisions relevant to the care of a child, such as the child's living arrangement, medical care, and *school placement*." (Emphasis added.) *Id.*, 2007-Ohio-5589, at ¶ 30, citing R.C. 3109.04(G).

> The standard in R.C. 3109.04(E)(2)(b) for modification of a shared-parenting plan is lower because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. The individual or individuals designated the residential parent and legal custodian of a child will have far greater influence over the child's life than decisions as to *which school the child will attend* . . . .

(Emphasis added.) *Id.* at ¶ 36.

{¶ 30} In *Fisher*, both parents moved to become the sole residential parent and legal custodian of the child. The Court concluded this modification requires a determination that a change in circumstances has occurred. *Id.* at ¶ 37. The instant case, however, does not involve such a modification, since both parents remain residential parents and legal custodians under the shared-parenting plan. Rather, this case concerns the modification of the designation of the residential parent for school purposes.

{¶ 31} Following *Fisher*, this court and other appellate courts held that "where the trial court only modifies parenting time and the designation of the residential parent for school purposes, the 'lower standard' under R.C. 3109.04(E)(2)(b) applies, i.e., the trial court need only find that the modification is in the best interest of the child." *G.B.*, 2022-Ohio-382, at ¶ 58, citing *F.T.*, 2020-Ohio-1624, at ¶ 58 -59; *In re E.B.*, 2020-Ohio-4139, ¶ 74-76 (8th Dist.); *Marimon v. Marimon*, 2021-Ohio-3437, ¶ 15-16 (1st Dist.) (where trial court's decision only modified the designation of the residential parent for school purposes, it did not involve a modification of an "order" or "decree" of the allocation of parental rights; therefore, trial court's decision granting motion to modify the terms of the shared-parenting plan to change the residential parent for school purposes was governed by R.C. 3109.04(E)(2)(b)); *Fritsch v. Fritsch*, 2014-Ohio-5357, ¶ 20-21 (1st Dist.) (trial court properly applied the best interest of the child standard in R.C. 3109.04(E)(2)(b) to modify the designation of the residential parent for school purposes); *Palichat v. Palichat*, 2019-Ohio-1379, ¶ 14 (2d Dist.) ("[P]arenting time, child support, and the designation of residential parent for school purposes have all been held to be terms of a shared parenting plan that only require a 'best interest' evaluation for modification"); *Ralston v. Ralston*, 2009-Ohio-679, ¶ 17 (3d Dist.) (where trial court retained both parents as residential parents and only modified the designation of residential parent for school purposes, trial court was required to apply R.C. 3109.04(E)(2)(b) rather than R.C. 3109.04(E)(1)(a)); *Myers v. Wade*, 2017-Ohio-8833, ¶ 12-13 (10th Dist.) (designation of residential parent for school

purposes involved modifications to shared-parenting plan governed by R.C. 3109.04(E)(2) not 3109.04(E)(1)(a)); *In re O.M.R.*, 2014-Ohio-4739, ¶ 9 (11th Dist.) (R.C. 3109.04(E)(2)(b) controls modifications of a shared-parenting plan that change or designate a residential parent for school purposes because such a designation does not affect the legal rights of either parent nor does it involve a reallocation of parental rights); and *In re E.L.C.*, 2015-Ohio-2220, ¶ 42-45 (12th Dist.) (juvenile court did not err when it applied R.C. 3109.04(E)(2)(b) to change the designation of residential parent for school purposes in the shared-parenting plan from mother to father after finding that the modification was in the child's best interest and without finding a change in circumstances of the child or either parent).

{¶ 32} Under the well-established precedent, therefore, R.C. 3109.04(E)(2)(b) governs this case. The trial court erred in requiring mother to demonstrate a change in circumstances for the modification she sought. Mother's first assignment of error is sustained.

**Second Assignment of Error: Best Interest of the Child**

{¶ 33} Pursuant to R.C. 3109.04(E)(2)(b), the trial court was only required to consider whether the modification sought by mother serves the best interest of the child. In denying mother's motion, the trial court provided an alternative ground for its decision. The trial court found that, even if a finding of a change in circumstances was not required, there was insufficient evidence presented to indicate that a change in the designation of the residential parent for school

purposes would be in the child's best interest.  Under the second assignment of error, mother argues that the trial court erred in its best-interest finding.

## A. Best Interest Factors and Standard of Review

{¶ 34} R.C. 3109.04(F)(1) sets forth factors for the trial court to consider when analyzing the best interest of the child.  It states:

> (1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . . .

(i) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 35} "Although a trial court is required to consider the factors set forth in R.C. 3109.04(F), it retains broad discretion in making a best-interest determination." *F.T.*, 2020-Ohio-1624, at ¶ 60, citing *In re E.O.T.*, 2019-Ohio-352, ¶ 39 (8th Dist.). Accordingly, we will not disturb the trial court's best-interest determination absent an abuse of discretion. *Id.* An abuse of discretion occurs if a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

## B. Testimony of Mother, Father, and the GAL

{¶ 36} At the trial held on June 26, 2023, before the magistrate, mother testified that she filed a motion to be designated as the residential parent for school purposes because the child has not performed well at school and there are some incidents at school that affected his emotional well-being. The child had just finished fourth grade, the first year in which students received letter grades, and he received two Cs, a B, and a D. When mother expressed her concern to father, he told her he was "fine with Cs." The child's maternal grandmother helped the child with his homework once a week between November 2022 to March 2023, and the child's grades improved. His teachers recommended that the child continue to receive help with his homework. Mother believed that as a stay-at-home parent, she could provide a better home environment for his academics.

{¶ 37} Mother was also concerned with two incidents that occurred at school. In February 2023, several girls at the school picked on him and he brought a pair of tweezers to school and threatened to stab them. In December 2022, he was bullied by a school aide, who is an acquaintance of father and his wife.

{¶ 38} According to mother, the child had difficulty in making friends and lacked sports activities. She stated there would be more sports activities in her area for the child to participate in. She also felt she could better address the child's emotional needs because she always listened to him and helped him navigate tough times.

{¶ 39} Mother has been attending the child's school functions and his medical appointments. She would drive from central Ohio to the Cleveland area for these events. While she acknowledged father and the child love each other, she testified that a designation of her as residential parent for school purposes would serve the child's best interest because it would allow her to help him with his academics and sports participation during the school year

{¶ 40} Father testified the child has friends in the school and the community and named several of them. The child enjoys spending time with his friends in the swimming pool and "bounce house" in his backyard. Father and the child spend time together playing golf, riding dirt bikes and four wheelers, playing with the child's radio-controlled cars, and visiting the local parks.

{¶ 41} As to the child's school performance, father testified the school year started "a little rocky" but the child improved at the end of the school year. The child

was diagnosed with borderline ADHD but did not take medications because mother did not agree to it. Father testified that the maternal grandmother spent time with the child every Wednesday working on his homework, but the time was not meant for homework only.

{¶ 42} Father also testified he has many family members living in close proximity and they have a strong relationship with the child. He testified that the child is doing well under the current shared-parenting plan and described him as "healthy, happy, strong-minded, and respectful." He did not agree with a change of the child's residential parent for school purposes.

{¶ 43} As to the incidents at school, the GAL reported that the incident involving the school aide affected the child's emotional well-being, but father attempted to address it, and the child ultimately felt supported by father. The GAL found the child to be struggling with making friends but both father and mother were coaching him on his social skills. The GAL found both parents to be very good parents and that father was quick to reach out to her for improving his coparenting skills. She noted the child's love of dirt-bike riding, camping, and trampoline jumping and that father facilitates these activities.

{¶ 44} While the child is developmentally on track, the GAL believed the child's academics were suffering and mother would be more available to work with the child on schoolwork to improve his grades.

{¶ 45} The GAL acknowledged the choice between the parents in this case was difficult. However, because of mother's availability as a stay-at-home parent to

attend to the child's school and emotional needs, the GAL stated that she could "understand it" if the trial court was to find that a change of the designation of the residential parent for school purposes to be in the child's best interest. She stressed, however, that the child is not harmed in any way by residing in father's household on a primary basis.

## C. Trial Court's Best-Interest Analysis

{¶ 46} The trial court cited the following evidence based on the testimony for its conclusion that the evidence did not support a finding that a change in the designation of the residential parent for school purposes would serve the child's best interest.

{¶ 47} Mother had concerns with the child's academic performance and believed that she, a stay-at-home parent, could help him with his schoolwork. Mother acknowledged, however, that it was the first year in which the child received letter grades and the child has made improvements on his most recent grades. The child's maternal grandmother helped the child with homework once a week, and she testified that the child did not always have difficulties completing his homework, but he would be distracted in certain environments.

{¶ 48} Mother was also concerned with the child's lack of close friends at his current school and in father's community and his lack of sports activities. Father, however, was able to name several of the child's friends. He also testified to the activities the child enjoyed such as golf, dirt-bike riding, radio-controlled cars, and trampolining.

{¶ 49} The GAL found both father and mother to be very good parents and that neither parent has caused harm to the child or the relationship between the parents. The GAL reported that father would acknowledge his shortcomings and is willing to improve his coparenting skills. The GAL testified that the child is not harmed in any way by being in father's household on a primary basis; she had no safety concerns with either father's or mother's household; and the child has structured activities in father's household.

{¶ 50} The trial court concluded there was insufficient evidence to find that "the significant and substantial upheaval in changing of school systems would be in the child's best interest, as the purpose of the statute is primarily to provide stability for the child." Mother challenges that finding on appeal.

{¶ 51} We note that R.C. 3109.04(F)(1) permits the trial court to consider all relevant factors without limiting the trial court to the enumerated factors. While stability is not specifically mentioned in R.C. 3109.04(F)(1), in a case where both parents appear to be able to provide a good home environment for the child, maintaining stability in the child's life can certainly be a relevant and legitimate factor to be considered by the trial court. *See e.g. Meaney v. Meaney*, 2010-Ohio-1969, ¶ 62 (11th Dist.) (The trial court considered all of the factors pursuant to R.C. 3109.04(F)(1) in determining the best interests of the children and their need for stability and continuity.).

{¶ 52} In affirming the trial court's best-interest determination, we are mindful that "custody issues are some of the most difficult and agonizing decisions

a trial judge must make." *Flickinger*, 77 Ohio St.3d at 418. In considering R.C. 3109.04(F)(1), "[n]o one factor is dispositive, and the court has discretion to weigh the factors as it sees fit." *In re C.L.W.*, 2024-Ohio-1519, ¶ 40 (12th Dist.). Affording wide latitude to the trial court in considering all the evidence before it, we are unable to conclude the trial court abused its discretion in finding the child's best interest would not be served by a modification of the designation of the parent for school purposes. The second assignment of error is overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)